JESÚS PONCE RAMOS ET AL., Plaintiffs and Appellees, *v.* FAJARDO SUGAR COMPANY, Defendant and Appellant.

No. 12592. Decided June 6, 1962.

*Sifre & Ruiz Suria, McConnell, Valdés & Kelly,* and *Ramón Cancio* for appellant. *Domingo Candelario* and *Manuel Janer Mendía* for appellees and for the Department of Labor.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

One hundred and fifty-two workmen-claimants, represented by the Department of Labor, filed a complaint against Fajardo Sugar Co. claiming unpaid wages in the amount of $4,751.96 for all of them, plus a like sum by way of penalty. They alleged that during the years 1953 to 1955 they worked seven consecutive days and that they were paid for the seventh day, or day of rest, at single rate instead of at double rate. They submitted the case to the trial court by means of a stipulation which in its pertinent part reads as follows:

"The workmen-claimants worked, and on this point there is no controversy between the parties, eight consecutive hours during the first six days of their workweeks, commencing to work at the same hour during each and every one of those days.

"The situation which has given rise to this claim arose on the occasion of the shift changes, since as a result of those

changes the workmen-claimants worked during certain hours which in the opinion of the Department of Labor are comprised within their seventh day or day of rest, and, consequently, they must be compensated at double rate, while the defendant in turn maintains that inasmuch as those hours are not comprised within the seventh day or day of rest, they are compensable at single rate.

"All the individual claims included in this case are comprised within one of the two modalities set forth below, both of which relate to the changes of shifts made in the workday of the workmen-claimants.

## FIRST SITUATION

"As a result of the change of shifts from one week to the other, the workmen commence to work on the first day of the second workweek after only 32 hours have elapsed after completing their workweek on the sixth consecutive workday of the previous or first week. As stated above, the eight-hour workday is consecutive, that is, without rest.

## SECOND SITUATION

"The workmen work from Monday until Saturday a work shift which commences at 2:00 p.m. and ends at 10:00 p.m. The change of shifts takes place on Sunday and the workmen start to work on Sunday at 6:00 a.m. until 2:00 p.m. Consequently, the worker who finished his workday corresponding to the sixth consecutive day of work during the first week on Saturday of that week at 10:00 p.m., starts to work again on Sunday (seventh consecutive day) at 6:00 a.m. and works eight hours until 2:00 p.m. of that day, and continues to work on the successive days of that week in the same shift from 6:00 a.m. to 2:00 p.m. The hours worked on Sunday by these workmen are paid them at double rate and those worked the following Monday at single rate.

"The Department of Labor maintains that in the first situation the hours worked by the workmen after only 32 hours since the worker finished his shift corresponding to the sixth consecutive workday are comprised within the seventh consecutive day, or day of rest, of this worker.

"Similarly, in the second case the Department of Labor maintains that the work performed by the workmen on Monday

of the second workweek is also comprised within the seventh day, or day of rest, and should be compensated at double rate.

. . . . . . . .

"The defendant maintains, on the other hand, that the day of rest extends for a period of 24 hours which begins to run from the termination of his working day on the sixth consecutive workday, which amounts to asserting that in the second situation pointed out above the day of rest starts on Saturday at 10:00 p.m., at which hour the workmen cease to work on their sixth consecutive workday, and ends 24 hours later, that is, on Sunday at 10:00 p.m.

. . . . . . . .

"Should this Hon. Court hold that the correct interpretation is that of the defendant and that in both situations pointed out the latter was not bound to pay at double rate because the hours in controversy do not come within the seventh day, in that case the dismissal of the entire claim would be in order.

"Should it hold, on the contrary, that the correct interpretation is that of the complainant and that in both situations pointed out the work performed during the hours in controversy was performed on the seventh day, in that case the defendant admits that the amount owed covering the difference of salary corresponds to the amount claimed and it consents that judgment be rendered for such amount.

"Should the court hold that the hours in controversy come within the seventh day under one of the two situations set forth in this case and which we pointed out and not under the other, in that case the parties agree to set apart the hours worked under each of the two situations in order that the court may determine the amount of the judgment."

The trial court sustained the complaint after making the following conclusions of law:

"1. The workweek of an employee is a fixed and regularly recurring period of 168 hours which is divided into seven consecutive periods of 24 hours each.

"2. Every 'workday' consists of 24 hours, which is divided into eight hours of work and 16 hours of rest. This 16-hour period of rest within each workday constitutes a limitation to the workday, according to the provisions of Act No. 379, as

construed at p. 175, *in fine,* in the case of *Compañia Popular* v. *Unión de Empleados,* 69 P.R.R. 167.

"3. The 24-hour period of which the 'workday' consists does not have to correspond necessarily to a calendar day, but it may commence within a calendar day and terminate within the following day.

"4. The workweek is a concatenation of seven days, these seven days being seven consecutive periods of 24 hours each, the first six 'of work' and the last 'of rest.'

"5. This cycle of seven 'days,' or rather of seven consecutive periods of 24 hours each, commences when the workman starts to work on his first workday upon returning from his rest period corresponding to the preceding week. (See the case of *Compañía Popular* v. *Unión de Empleados, supra.*)

"6. There is a possibility that upon the concurrence of a change of shift the workers be required to start to work within a specific workweek before the expiration of the period of rest corresponding to the preceding week, and in that case, because a workweek runs into the following week, the workman commences his second workweek within a period of time which is in turn comprised in and forms part of the seventh day, or period of rest corresponding to the preceding week. This is what occurs in both situations which have given rise to this suit.

"7. When the eight work hours within each workday are successive, the workman is entitled to rest 16 hours, also in succession, from the termination of his workday until the commencement of the following workday.

"8. The 24 hours corresponding to the seventh day are counted from the termination of the 16 hours which compose the rest period corresponding to the sixth workday, wherefore a workman who works on the basis of a workday of eight successive hours must rest in all 40 hours, counted from the termination of his sixth consecutive workday until the commencement of the following workweek.

"9. Since the defendant admits that the workmen-claimants worked during the two situations pointed out in paragraphs 5 and 6 of the findings of fact and that it paid for such work at single rate, and since according to our conclusions of law it should have paid them at double rate, the defendant owes the complainants the basic amount claimed in the complaint, inas-

580

much as it admitted the accuracy of the computations as respects the difference in salaries due under such hypothesis. This difference in salary amounts to $4,751.96.

"10. Such difference in salaries not having been paid in due time, the workmen-claimants are entitled to claim, in addition thereto, a like amount by way of additional penalty, totalling $9,503.92."

Both parties are agreed that Act No. 289 of 1946\* (Sess. Laws, p. 682) applies to the workmen in this case. That statute provides that:

"All employees of any commercial or industrial establishment, enterprise, or lucrative business *not subject* to the provisions of Section 553 of the Penal Code of Puerto Rico, as subsequently amended, relative to the closing to the public, shall be entitled to one day of rest for every six (6) working days.

"For the purposes of this Act, one day of rest shall be understood as a period of twenty-four (24) consecutive hours.

. . . . . . . .

"Any employer who employs or permits an employee to work on the day of rest established by this Act, shall be obliged to pay said employee for the hours worked during such day of rest a rate double the salary rate agreed upon for regular working hours."

Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254) should be applied jointly with the aforesaid statute in this case. This Act also provides that eight hours of work constitute the legal working day in Puerto Rico, and that 48 hours of work constitute a working week. It also provides that regular hours of work are eight hours during *any* period of twenty-four consecutive hours, and that extra hours of work are: (*a*) the hours that an employee works for his employer in excess of eight hours during *any* period of twenty-four consecutive hours . . .; (*d*) the hours that an employee works for his employer during the days or hours when the establish-

---

\* See Act No. 78 of June 13, 1953 (Sess. Laws, p. 268), amending § 1 of Act No. 250 of May 9, 1950 (Sess. Laws, p. 656), re-enact'ng § 553 of the Penal Code.

ment in which he renders services should remain closed to the public by provision of law; (e) the hours that an employee works for his employer during the day of rest heretofore or hereafter fixed by law in the case of industries and businesses not subject to the closing of their establishment.

The problem presented in this case is the determination of the exact moment when the period of 24 consecutive hours of rest referred to in Acts Nos. 289 of 1946 and 379 of 1948 begins to run, or, otherwise stated, at what exact moment terminates the sixth consecutive day of work referred to in Act No. 289. This in turn depends on the moment when the sixth day of work commences. Notwithstanding the elaborate exposition on the periods of work and of rest contained in *Compañía Popular* v. *Unión de Empleados*, 69 P.R.R. 167, and thereafter in *Commissioner of Labor* v. *District Court*, 74 P.R.R. 82, the specific problem herein involved was not discussed in those cases.

The defendant–appellant maintains that the rest period of 24 consecutive hours commences at the termination of work on the sixth day of work. The workmen contend that that period commences at the termination of the sixth day of work and that the latter commences when the employee starts to work on that day. The question for decision can not be approached without taking into account the legislation on closing of establishments — § 553 of the Penal Code, as amended. In 1917, when Act No. 26 was enacted on November 23 of that year (Sp. Sess. Laws, p. 272) to amend § 553, the lawmaker for the first time combined the aspect of the closing with the question of salaries, and provided in § 3 of that Act that employees and clerks of enterprises and establishments [not]* exempted by § 553 and who render services on the basis of an annual, monthly or weekly salary, or in any

---

* In *Parrondo* v. *L. Rodríguez & Co.*, 64 P.R.R. 418, we explained that this "not" was erroneous and that the legislative intention was to refer to the establishments exempted by § 553.

form other than for wages or piece work at a fixed price, shall be entitled to one day of rest for every six days of work, *at full salary.* This provision was interpolated in other subsequent amendatory laws of § 553, such as Act No. 18 of 1925 (Sess. Laws, p. 136) ; Act No. 54 of 1930* (Sess. Laws, p. 408), and Act No. 110 of May 13, 1937 (Sess. Laws, p. 258), and was in force until we declared it null and void in November 1945, for a technical reason, in *Laboy* v. *Corporación Azucarera, etc.*, 65 P.R.R. 397. It was promptly substituted by Act No. 289 of April 9, 1946.

Both § 553 of the Penal Code, relative to the closing of establishments, and Act No. 289, covering the establishments excepted by that section, operate on the basis of identical periods of calendar time: the 168 chronological hours of a calendar week divided into six consecutive portions of 24 hours each which compose the work period, and a portion of 24 consecutive hours which corresponds to rest. The difference between those periods consists only in that § 553, in providing that the establishments shall be closed on *Sunday*, operates a fortiori on the basis of the calendar week extending from one Sunday to another and on the basis of the calendar day which begins at twelve midnight. According to Act No. 289, the periods of work and of rest may coincide with the natural or calendar day and week, but it does not necessarily have to be so. They may be any work period of six consecutive portions of 24 hours each, irrespective of the day of the week such period commences, and the rest period, the following portion of 24 consecutive hours, whether or not it does not coincide with the calendar day.

Act No. 49 of August 7, 1935 (Sp. Sess. Laws, p. 538) established for the first time the legal workday in commercial and industrial establishments and the same was fixed at eight hours during any *natural day.* Act No. 379 of 1948

---

* Act No. 54 of 1930 was expressly repealed by Act No. 250 of May 9, 1950.

does not require that the workday be performed on a natural day. The latter provides that regular hours of work are eight hours during *any* period of 24 consecutive hours, and 48 hours during any week. And Act No. 289 defines the day of rest as a period of 24 consecutive hours. In *Commissioner of Labor* v. *District Court, supra*, we already said that Act No. 379 did not define the workweek, except that it provided that it shall consist of 48 hours, and that it may either be the calendar week or a period of seven consecutive days, according to the special situation involved.

Let us see which would be the situation of a way of work similar to that in the instant case in an establishment subject to the closing under § 553 of the Penal Code. They started on Monday at 6 o'clock and terminated on Saturday at 2:00 p. m. They would enjoy the remaining ten hours of Saturday during which they were not supposed to work (unless it were overtime), plus the 24 hours of Sunday and six hours of Monday, making a total of 40 hours from the termination of the workweek on the sixth day until its commencement after Sunday, or 48 hours from the commencement of the previous work period. Similarly, those who started to work on Monday at 2 o'clock and terminated on Saturday at 10:00 p. m. would enjoy 40 hours since the termination of the previous period until the resumption of work after the closing. Parting from the basis of a consecutive period, as in the case at bar, in the case of an establishment subject to § 553 there would *normally* elapse a minimum of 48 hours between every commencement of the regular work period excepting Sunday, or a minimum of 40 hours between the termination and the resumption. But this can not be an inflexible rule of law because while the commencement of a workweek is a constant factor—the commencement of Monday — the commencement of the regular work period is a changing factor. Hence, if there were a change of shifts (let us take, for example, the changes of shift of the paintiffs

herein) in the case of those who worked from 6:00 a.m. to 2:00 p.m. and then worked from 2:00 p.m. to 10:00 p.m., 48 hours instead of 40 would have elapsed from the termination of the previous work period until resumption of the next period after Sunday, or 56 hours instead of 48 hours after its commencement. Yet, in the case of the others who worked on the 2 to 10:00 p.m. shift and passed to the 6:00 a.m. to 2:00 p.m. shift, only 32 hours instead of 40 would have elapsed from the termination of the work period before Sunday and 40 instead of 48 since its commencement. There could be fluctuations between a minimum of 24 and a maximum of 40 hours from the termination of the Saturday workday until its resumption on Monday, or between a minimum of 32 and a maximum of 56 hours since the commencement, depending on the particular form of work in an establishment subject to § 553 and on the hour of the sixth day when the regular work period terminates.

Pursuant to the norm which the defendant–appellant is bent on applying in this case under Act No. 289, the employees would resume the regular work period after the day of rest, *always* within 24 hours from the termination of the sixth consecutive workday, as compared with the 40 hours normally worked according to the Closing Act, or within 32 hours instead of 48 after its commencement.

Apart from the fact that such computation would alter the proper equilibrium between the workday, including the hours of work and of rest, and the workweek, there is no basis to assume that the lawmaker intended to establish such great discrimination between the workmen in either class of establishment where it is the public policy of both legislations, § 553 and Act No. 289, to protect the worker, where in both the periods of work and of rest are of identical natural duration and where the only difference which would not withstand discrimination is that § 553 is based on the calendar day and week and the day of rest always falls on Sun-

day, and Act No. 289 on any period of like duration divided into equal portions.

■ We must decide, as a question of law of general application in any case covered by Act No. 289, that the period of rest of 24 consecutive hours begins to run from the termination of the sixth day or consecutive period of work and not from the termination of the regular period of that day, except where both things actually coincide.

■ The problem therefore consists in determining when the sixth consecutive period of work ends, in which case it would be necessary to know when it commences. It can not be sustained as a principle of law of general application that it always commences at the beginning of the regular period of that day, as maintained by the plaintiffs. The reason is that under Act No. 289, taken jointly with Act No. 379, there exists the same limitation of the natural week: 168 hours divided into consecutive portions of 24 hours. Although a regular period could not be commenced before 24 hours from the commencement of the previous period—Act No. 379— there is nothing to prevent it from commencing after, since such period consists of 8 hours in *any* period of 24 hours.*

■ In order to determine when the sixth period ends, it is necessary to start from the commencement of the work in the first period following the period of rest.** This sixth period does not commence, as a question of law, before the 120 hours nor ends 144 hours after the commencement of the working day of the first period. Therefore, in the last anal-

---

* As an example: If a workman commences his regular period at 6:00 a.m. in the first period after the day of rest, but at different later hours in the following days until commencing at 4:00 p.m. in the sixth period, the result would be, taking the commencement of the sixth period of work for computing the termination thereof, that 154 hours instead of 144 would have elapsed, and that including the seventh period of rest it would extend up to 178 hours, thereby exceeding 168 hours a week.

**In the absence of a fixed starting point as is the commencement of the day in the cases provided in § 553, the only other starting point which affords certainty is the commencement of the period of work.

ysis the question is translated into one of fact, depending on the particular form of work involved in each case.

■■ In the case under consideration the stipulation shows that the workmen commenced the first period on Monday at 2:00 p.m. and continued to work in the same manner during the following periods. Their sixth period ended 144 hours later, that is, on Sunday 2:00 p.m. Their day of rest terminated the following Monday at 2:00 p.m. When they changed shifts they worked on Sunday from 6:00 a.m. until 2:00 p.m., for which they were paid overtime, and it had to be that way because it came within the proper sixth period after working the regular period. The work performed from Monday at 6:00 a.m. until 2:00 p.m. of that day was comprised within their day of rest, and they were entitled to payment at double rate.

Regarding the so-called "first situation" of the stipulation, we have already seen that it can not be held, as a bare question of law, that all work commenced within 32 hours after the termination of the work of the sixth period would necessarily fall within the day of rest. It depends on the facts. The stipulation does not set forth with accurate certainty the facts necessary to determine whether this is the situation in the case at bar. In view of the uncertainty, we prefer to set aside the judgment and remand the case in order that, pursuant to the last three paragraphs of the above-transcribed stipulation, the parties may submit to the trial court a breakdown of the hours worked under each of the two situations and (1) compensate at double rate the hours corresponding to the "second situation" stipulated; (2) determine the compensation of those hours which according to the facts broken down may correspond to the "first situation," pursuant to the norms laid down in this opinion. The case will be remanded.